## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                                            Case No.  08-34530

PHYLLIS T. FRENCH
a/k/a PHYLLIS T. BOATMAN-FRENCH
a/k/a PHYLLIS T. BOATMAN

                    Debtor

        PHYLLIS T. FRENCH

                 Plaintiff

           v.                            Adv. Proc. No.  08-3166

        AMERICAN GENERAL FINANCIAL
        SERVICES

                 Defendant

## MEMORANDUM ON
## MOTION TO DISMISS

**APPEARANCES:**    BRACKETT & STRUNK, PLLC
                 Justin A. Brackett, Esq.
                 1104 Merchants Drive
                 Suite 101
                 Knoxville, Tennessee  37912
                 Attorneys for Plaintiff/Debtor

                 HUSCH BLACKWELL & SANDERS LLP
                 Jeffrey S. Norwood, Esq.
                 Laura F. Ketcham, Esq.
                 736 Georgia Avenue
                 Suite 300
                 Chattanooga, Tennessee  37402
                 Attorneys for Defendant

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint Seeking Injunctive Relief, Damages, Disallowance of Claim and Other Relief in a Core Adversary Proceeding (Complaint) filed by the Plaintiff on November 14, 2008, asking the court to (1) disable public access to the proof of claim filed by the Defendant in the Plaintiff's bankruptcy case; (2) find the Defendant in civil contempt for filing a proof of claim without redacting certain privacy protected information of the Plaintiff; (3) strike and disallow the Defendant's claim, and declare the underlying debt cancelled; (4) assess sanctions against the Defendant for intentionally or negligently releasing privacy protected information; (5) award damages for intentional and/or negligent infliction of emotion distress; and (6) award compensatory and punitive damages and attorney's fees.  On December 17, 2008, the Defendant filed a Motion to Dismiss and corresponding Brief, to which the Plaintiff filed the Plaintiff's Response to Defendant's Motion to Dismiss and Memorandum of Law (Response) on January 6, 2009.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(A), (B), (O) (2006).  To the extent non-core but related issues are impacted, the parties have consented to the entry of final orders or judgment by the bankruptcy judge.  28 U.S.C. § 157(c)(2) (2006).[1]

---

[1] The Defendant, in its Motion to Dismiss, states that to the extent this adversary proceeding raises issues that are noncore but related to the Debtor's bankruptcy case, it consents to the entry of final orders or judgment by this court. In her Complaint, the Plaintiff avers that this "core proceeding arises in and is related to the . . . Chapter 13 case," "that the court has both personal and subject matter jurisdiction to hear this case," and that the court has "jurisdiction to hear all state law claims."  The court finds this an express consent on the part of the Plaintiff to allow the court to enter final orders and judgment to the extent the Complaint raises noncore but related issues. *See Valentine v. Elliott (In re Valentine*), 357 B.R. 744, 750-51 (Bankr. E.D. Va. 2007).

2

# I

The Plaintiff filed the Voluntary Petition commencing her Chapter 13 bankruptcy case on October 10, 2008. The Defendant was listed among the Plaintiff's unsecured creditors in Schedule F - Creditors Holding Unsecured Nonpriority Claims as the holder of an undisputed, liquidated, non-contingent claim for a "personal loan" in the amount of $7,088.95. On October 31, 2008, the Defendant filed a nonpriority, unsecured claim in the Plaintiff's bankruptcy case in the amount of $4,889.79 (Proof of Claim), which was scanned through the court's electronic case filing (ECF) system to the Claims Register. Attached to the Proof of Claim were copies of the official Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines sent out to creditors by the bankruptcy court clerk and the Note signed by the Plaintiff in favor of the Defendant evidencing, *inter alia*, the Plaintiff's social security number and date of birth, respectively.

On November 14, 2008, the Plaintiff filed a motion in the Debtor's case entitled "Debtor's Ex Parte, Emergency Motion to Restrict Public Access to Claim or in the Alternative to Delink, Disable, or Remove Proof of Claim #1 Filed By American General Financial Services" (Motion to Restrict Public Access), asking the court to restrict public access to the Proof of Claim due to the inclusion of her birth date and social security number on the attachments. That same date, the court entered an "Order Granting Debtor's Ex Parte Motion to Restrict Public Access to Claim #1 By American General Financial Services," directing the Clerk of the Court to "remove all attachments to Claim no. 1 filed by American General Financial Services on October 31, 2008, in the amount of $4,889.79, without prejudice to this creditor to file an amended claim containing appropriate redactions of privacy protected matters." Pursuant to the November 14, 2008 Order, all attachments

3

to the Proof of Claim were immediately removed from the court's ECF system and were no longer accessible to ECF users after that date.

The Debtor also filed the Complaint initiating this adversary proceeding on November 14, 2008, in which she alleges that the Defendant, by filing its Proof of Claim without redacting her privacy protected information, intentionally made such information public to any and all parties with internet access, opening the door for identity theft. The Plaintiff avers that the Proof of Claim should be removed from public access, disallowed and cancelled, and argues that the Defendant should be held in contempt and appropriately sanctioned for failing to redact the Plaintiff's privacy protected information, asserting violations of The Gramm-Leach-Bliley Act, the E-Government Act of 2002, the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure. The Complaint also alleges intentional and/or negligent infliction of emotional distress under Tennessee law, seeking compensatory and punitive damages and attorney's fees.

The Defendant filed the Motion to Dismiss on December 17, 2008, contending that the Complaint does not state a claim upon which relief can be granted for the following reasons: (1) because the Plaintiff has not pled any basis for disallowance of its Proof of Claim pursuant to the Bankruptcy Code; (2) because neither The Gramm-Leach-Bliley Act nor the E-Government Act of 2002 provides a private, civil cause of action for an alleged violation; and (3) because the alleged intentional and/or negligent infliction of emotional distress claims are not supported by the facts averred by the Plaintiff. On January 6, 2009, the Plaintiff filed her Response, arguing that she has, in fact, sufficiently pled facts to survive the Motion to Dismiss and asks the court to deny it so that this adversary proceeding may proceed to trial.

4

## II

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When contemplating a motion to dismiss under Rule 12(b)(6), the court should "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).  Nevertheless, notwithstanding that all factual allegations are deemed to be true, the court is not required to accept legal conclusions or unwarranted factual inferences as true. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002).

Instead, the focus should be upon "whether the plaintiff has pleaded a cognizable claim[,]" *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003), and whether the complaint contains "either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("Though decidedly liberal, the standard does require more than bare assertions of legal conclusions[, and a plaintiff's] obligations to provide the 'grounds' of . . . entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action.") (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)).  Additionally, the court should not rely upon any documents other than the pleadings, although it may rely upon public records or other documents appropriately encompassed by judicial notice set forth in Rule 201 of the

Federal Rules of Evidence.[2] *Perry v. EMC Mortgage Corp. (In re Perry)*, 388 B.R. 330, 334 (Bankr. E.D. Tenn. 2008); *see also New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

## III

In her Complaint, the Plaintiff alleges that the Defendant "has intentionally communicated or otherwise made available to the general public the personal, sensitive and private data of the Plaintiff in direct violation of [the] standard of care set by The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq., The E-Government Act of 2002, 44 U.S.C. § 3500 et seq., 11 U.S.C. § 107(c), Federal Rule of Bankruptcy Procedure 9037, Federal Rule of Civil Procedure 5.2, and others[,]" COMPL. at ¶ 14, has invaded the Plaintiff's privacy, and subjected her to intentional and/or negligent infliction of emotional distress.  In relief, the Plaintiff seeks disallowance of the Proof of Claim, injunctive relief, contempt of court, actual damages, and punitive damages.[3]

---

[2] As authorized by Rule 201 of the Federal Rules of Evidence, in making its resolution of the Motion to Dismiss filed by the Defendant, the court takes judicial notice of the undisputed material facts of record in the Plaintiff's bankruptcy case file.  *See* FED. R. EVID. 201; *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 517, n. 1 (Bankr. N.D. Ill. 2006) (holding that a court may take judicial notice of the record in its own cases).

[3] Various paragraphs in the Complaint are misnumbered beginning with the paragraphs following number 22 which precede the averments giving rise to the Plaintiff's Second Cause of Action.  The court has re-numbered these paragraphs sequentially in this Memorandum as follows:  those paragraphs setting forth the Plaintiff's Second Cause of Action, numbered 21 through 28 in the Complaint, are re-numbered 23 through 30; those paragraphs setting forth the Plaintiff's Third Cause of Action, numbered 23 through 29 in the Complaint, are re-numbered 31 through 37; those paragraphs setting forth the Plaintiff's Fourth Cause of Action, numbered 30 through 34 in the Complaint, are re-numbered 38 through 42; those paragraphs setting forth the Plaintiff's Fifth Cause of Action, numbered 35 through 39 in the Complaint, are re-numbered 43 through 47; and those paragraphs setting forth the Plaintiff's Sixth Cause of Action, numbered 40 through 48 in the Complaint, are re-numbered 48 through 56.  With the exception of the paragraphs setting forth the Plaintiff's First Cause of Action, which are correctly numbered in the Complaint, all references in this Memorandum to specific paragraphs in the Complaint will be to those paragraphs as re-numbered by the court.

**A**

**FIRST CAUSE OF ACTION**
**(Complaint - Paragraphs 18 through 22)**

For her First Cause of Action (Count One), the Plaintiff avers that the Defendant "has intentionally revealed to the general public the Debtor's [sic] private and sensitive data and nonpublic information in violation of 11 U.S.C. § 107(c) and Federal Rule of Bankruptcy Procedure 9037." COMPL. at ¶ 19. As a result, she seeks the following relief: (1) removal of the Proof of Claim from the court's ECF and Pacer systems; (2) disallowance of the Proof of Claim; (3) cancellation of the underlying debt owed to the Defendant, whether or not a discharge is entered in her bankruptcy case; and (4) assessment of sanctions against the Defendant in the form of attorney's fees and expenses.

Section 107 of the Bankruptcy Code, entitled "Public access to papers," was enacted in 1978 and "establishes a broad right of public access, subject only to limited exceptions set forth in the statute, to all papers filed in a bankruptcy case." *Neal v. Kan. City Star (In re Neal)*, 461 F.3d 1048, 1053 (8th Cir. 2006) (quoting *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005)). As material to this adversary proceeding, § 107 provides:

> (a) Except as provided in subsection[] . . . (c) of this section . . ., a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
>
> . . . .
>
> (c)(1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

7

(A) Any means of identification (as defined in section 1028(d) of title 18[4])
contained in a paper filed, or to be filed, in a case under this title.

(B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107 (2005).  Courts have broad discretion as to the types of information which may be

limited within the scope of this definition.  *See* 2 COLLIER ON BANKRUPTCY ¶ 107.04[1] (15th ed.

2008).

Because § 107(c) does not expressly provide a private right of action, in order for the Plaintiff

to proceed under Count One, the court must find an implied right of action.  To that end, the Sixth

Circuit has directed that courts "are not to infer the existence of private rights of action haphazardly."

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000).  When making a determination

as to whether to imply a private right of action, the court must look to the following four factors:

> First, we consider whether the plaintiff is one of the class for whose special benefit
> the statute was enacted.  Second, we examine legislative history to see if we can
> discern any intent either to create or to deny a right of action under the statute.  Third,
> we weigh whether implying a right of action would be consistent with the purposes
> of the legislative scheme.  Finally, we determine whether the cause of action is one
> traditionally relegated to state law, so that it would be inappropriate to infer a cause
> of action based solely on federal law.

---

[4]    [T]he term "identification document" means a document made or issued by or
under the authority of the United States Government, a State, political subdivision
of a State, a sponsoring entity of an event designated as a special event of national
significance, a foreign government, political subdivision of a foreign government,
an international governmental or an international quasi-governmental organization
which, when completed with information concerning a particular individual, is of
a type intended or commonly accepted for the purpose of identification of
individuals[.]

18 U.S.C. § 1028(d)(3) (2006).

8

*Thomas M. Cooley Law Sch. v. ABA*, 459 F.3d 705, 711 (6th Cir. 2006) (citations omitted).  Whether

a private right of action exists is a jurisdictional question, *TCG Detroit v. City of Dearborn*, 206 F.3d

618, 622 n.2 (6th Cir. 2000), and "[w]here jurisdiction is lacking, the court must on its own motion

dismiss the case."  206 F.3d at 622 (citing Fed. R. Civ. P. 12(h)(3)).

"'The most important inquiry,' as the Court subsequently explained in *Touche Ross & Co.*

*v. Redington*, 442 U.S. 560, 575, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979), 'is whether Congress

intended to create the private remedy sought by the plaintiffs.'"  *Pertuso*, 233 F.3d at 421; *see also*

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("These factors are not

given equal weight; the critical inquiry is congressional intent.").  "Courts should imply private

rights of action only if it [sic] finds affirmative evidence that Congress intended to create such a

right." *Thomas M. Cooley Law Sch.*, 459 F.3d at 711.  If the statute itself provides remedies, others

should not be added.  *Parks School*, 51 F.3d at 1484.

With respect to Congressional intent, as well as whether the Plaintiff is one of the class for

whose special benefit § 107(c) was enacted, the court must examine the statute as a whole.

Subsection (a) states that all papers filed and docketed in a bankruptcy case are public records and

available to the general public for examination, with two limited exceptions.  The first of these

exception is found in subsection (b), which authorizes the bankruptcy court to protect an entity with

respect to the filing of certain trade secrets, confidential research, development, and commercial

information, and scandalous and/or defamatory information.  Subsection (c) contains the second

limited exception, in that it authorizes the bankruptcy courts to protect an individual from certain

means of identification if the court finds that disclosure creates an undue risk of identity theft.  The

9

provisions of subsection (b), which refers to protecting "an entity" and/or "a person," are permissive if the court acts *sua sponte*, but are mandatory if requested by a party in interest. Conversely, the provisions of subsection (c), which refer to protecting "an individual," are permissive and require the court to find cause for restricting public access.

Clearly, the Plaintiff falls within the scope of individuals as referenced in subsection (c); however, taking the statute as a whole, the court does not believe that § 107(c) was enacted for the special benefit of any specific class of persons. Rather, the purpose of § 107 as a whole is to ensure that papers filed in a bankruptcy case are public records, and the purpose of § 107(c), specifically, is to set forth a limited exception to the general rule that all records are public, allowing a court to limit public access of certain identification information if it determines that cause exists and dissemination of the information would constitute an undue risk of identity theft. In other words, the court agrees that, by authorizing the court to limit public access to certain types of papers, the statute "addresses the operation of the court, not the behavior of parties who appear before it[.]" *Southhall v. Check Depot, Inc. (In re Southhall)*, 2008 Bankr. LEXIS 3446, at *7, 2008 WL 5330001, at *2 (Bankr. N.D. Ala. Dec. 19, 2008); *see also Newton v. ACC of Enter., Inc. (In re Newton)*, 2009 WL 277437, at *2 (Bankr. M.D. Ala. Jan. 29, 2009).

Although sparse, legislative history confirms Congressional intent as to the statutory purpose. Section 107 was amended by the addition of subsection (c) as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), to address privacy concerns and to prevent the "disclosure of sensitive information in light of the emerging problem of identity theft and also the possible need to protect individuals from domestic violence or other injury." 2 COLLIER ON

10

BANKRUPTCY ¶ 107.LH[2] (15th ed. 2008). With respect to these issues, the legislative history giving

rise to § 107(c) states as follows:

> Privacy Protections. Under current law, nearly every item of information filed in a
> bankruptcy case is made available to the public. S. 256 restricts public access to
> certain personal information pertaining to an individual contained in a bankruptcy
> case file to the extent the court finds that disclosure of such information would create
> undue risk of identity theft or other unlawful injury to the individual or the
> individual's property. In addition, the bill prohibits the disclosure of the names of
> the debtor's minor children and requires such information to be kept in a nonpublic
> record, which can be made available for inspection only by the court and certain other
> designated entities. Further, S. 256 prohibits the sale of customers' personally
> identifiable information by a business debtor unless certain conditions are satisfied.

H.R. Rep. 109-31(I), Pub. L. 109-8 (Apr. 8, 2005).

This legislative history evidences that Congress did not intend for § 107(c) to create a private

right of action or to be a remedial statute in any way. Instead, it expressly discusses the duty of the

court to restrict public access to the extent *the court* finds that disclosure of information creates an

undue risk, and as such, reinforces that the sole purpose § 107(c) was to establish public access to

court documentation with very limited exceptions and not to create a private right of action for the

Plaintiff to seek damages for the filing of private personal information. Accordingly, the Plaintiff

has failed to state a claim upon which relief may be granted with respect to an alleged violation of

§ 107(c).

The Plaintiff also cites to Rule 9037 of the Federal Rules of Bankruptcy Procedure as a basis

for the relief sought. Rule 9037, entitled "Privacy Protection For Filings Made with the Court,"

became effective in its present form on December 1, 2007, and provides, in material part:

> (a) Redacted filings. Unless the court orders otherwise, in an electronic or paper
> filing made with the court that contains an individual's social-security number,

taxpayer-identification number, or birth date, the name of an individual, other than the debtor, known to be and identified as a minor, or a financial-account number, a party or nonparty making the filing may include only:

> (1) the last four digits of the social-security number and taxpayer-identification number;

> (2) the year of the individual's birth;

> (3) the minor's initials; and

> (4) the last four digits of the financial-account number.

. . . .

(d) Protective orders. For cause, the court may by order in a case under the Code:

> (1) require redaction of additional information; or

> (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court.

FED. R. BANKR. P. 9037.  This Rule "is derived from and implements the policy adopted by the Judicial Conference in September 2001 to address the privacy concerns resulting from public access to electronic case files. . . . [Nevertheless, t]he clerk is not required to review documents filed with the court for compliance with this rule.  As subdivision (a) recognizes, the responsibility to redact filings rests with counsel, parties, and others who make filings with the court."  FED. R. BANKR. P. 9037 Advisory Comm. notes (2007).

Unlike § 107(c), Rule 9037 offers a remedy in the form of requesting a court order requiring redaction of the offending information or limiting or prohibiting remote electronic access to documents by non-parties.  In this case, the remedy envisioned by Rule 9037(d) has already been afforded to the Plaintiff in that the offending documentation attached to the Proof of Claim was

12

removed from the court's ECF and Pacer systems on November 14, 2008, at 3:20 p.m.,

approximately one hour after the Plaintiff filed her Motion to Restrict Public Access at 2:21 p.m. on

that same date.[5] Rule 9037 does not, on the other hand, provide a private right of action for the relief

sought by the Plaintiff to cancel the debt owed to the Defendant and/or assess sanctions against the

Defendant for attaching documentation to the Proof of Claim containing the Plaintiff's full social

security number and birth date.

The inability to state a cause of action under either § 107(c) or Rule 9037 does not, however,

resolve the Plaintiff's objection to the Proof of Claim.  Creditors of a debtor may file proofs of claim,

*see* 11 U.S.C. § 501 (2005), and in Chapter 13 cases, unsecured creditors must file them in order to

participate in the claims distribution process.  *In re Kemmer*, 315 B.R. 706, 712 (Bankr. E.D. Tenn.

2004) (citing FED. R. BANKR. P. 3002(a)).  "A proof of claim executed and filed in accordance with

[the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the

claim."  FED. R. BANKR. P. 3001(f).  Additionally, a proof of claim filed in accordance with § 501

"is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a) (2005).

In the event of an objection, the court must, after notice and a hearing, determine the amount

of the claim as of the petition date and allow the claim unless it falls into one of the following

enumerated exceptions:

> (1) such claim is unenforceable against the debtor and property of the debtor, under
> any agreement or applicable law for a reason other than because such claim is
> contingent or unmatured;

---

[5] The Complaint initiating this adversary proceeding was filed by the Plaintiff at 2:16 p.m. on November 14, 2008, before she filed the Motion to Restrict Public Access.

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds –

    (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of –

        (I) the date of the filing of the petition; and

        (ii) the date on which such lessor repossessed or the lessee surrendered, the leased property; plus

    (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds –

    (A) the compensation provided by such contract, without acceleration, for one year following the earlier of –

        (I) the date of the filing of the petition; or

        (ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

    (B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide, and except that in a case under chapter 13, a claim of a governmental unit for a tax with respect to a return filed under section 1308 shall be timely if the claim is filed on or before the date that is 60 days after the date on which such return was filed as required.

11 U.S.C. § 502(b) (2005); *see also* FED. R. BANKR. P. 3007 (setting forth the procedure for objecting to claims and authorizing the inclusion of an objection in an adversary proceeding); E.D. Tenn. LBR 3007-1 (setting forth the local procedures concerning objections to claim).

Once a party objects to a claim, that party bears the burden of presenting evidence to rebut the creditor's claim and of producing evidence to refute at least one of the elements essential to the claim's legal sufficiency, at which point the burden reverts back to the claimant to prove the validity of the claim by a preponderance of the evidence. *In re Cleveland*, 349 B.R. 522, 527 (Bankr. E.D. Tenn. 2006) (citing *In re Giordano*, 234 B.R. 645, 650 (Bankr. E.D. Pa. 1999)). This is particularly true "when a debtor has included the claim in his statements and schedules[,]" *Kemmer*, 315 B.R. at 716, since listing a debt as undisputed, liquidated and non-contingent in bankruptcy schedules executed under oath "are deemed an admission of the debt under [Rule 801(d)(2) of the Federal Rules of Evidence]." *In re Cluff*, 313 B.R. 323, 339-40 (Bankr. D. Utah 2004).

The Defendant filed the Proof of Claim on October 31, 2008, in accordance with the Bankruptcy Code and Rules; however, the presumption of its validity has been challenged by the

15

Plaintiff's objection to claim, as asserted in this adversary proceeding filed on November 14, 2008. Nevertheless, the Plaintiff still bears the burden of refuting that the Proof of Claim was not legally sufficient. For her objection, she has alleged that the Defendant's failure to redact personal information is grounds for disallowance of the Proof of Claim; however, she has not cited to nor does her averment encompass one of the foregoing statutory exceptions, which provide "the sole bases for a party to object to a claim." *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004); *see also In re Haefner*, 345 B.R. 588, 590 (Bankr. N.D. Ohio 2006) (holding that "a procedural violation, such as that alleged here [the failure to redact account information from an attachment to a proof of claim], therefore, cannot serve as an independent ground for the disallowance of a creditor's proof of claim."). Moreover, the Plaintiff has not offered any evidence to dispute the legal validity of the Proof of Claim, and in fact, acknowledges the existence thereof in her statements and schedules filed on October 10, 2008.

Taking the Complaint in a light most favorable to the Plaintiff, the court finds that the Plaintiff has failed to plead facts that would entitle her to relief under any portion of Count One of the Complaint. There is no private right of action available to the Plaintiff under § 107(c), entitling her to any relief, and while there is a remedy provided for under Rule 9037 of the Federal Rules of Bankruptcy Procedure, it does not extend beyond the redaction of the offending documentation, which was accomplished by the court's order of November 14, 2008. Moreover, the Plaintiff has failed to plead facts challenging the legal sufficiency of the Proof of Claim with respect to her objection to claim pled in association with the foregoing section of the Bankruptcy Code and Rule

16

of Bankruptcy Procedure.[6]  Accordingly, the Motion to Dismiss shall be granted as to Count One of

the Complaint, which shall be dismissed.

**B**

**SECOND CAUSE OF ACTION**
**(Complaint - Renumbered Paragraphs 23 through 30)**

For her Second Cause of Action (Count Two), the Plaintiff alleges that the Defendant

violated "the appropriate standard of care for the protection, security, and confidentiality of the

nonpublic personal information and private data of [its] customers" set by The Gramm-Leach-Bliley

Act, resulting in "damages, mental anguish and emotional distress and injury" to the Plaintiff.

COMPL. at ¶¶ 29-30.[7]

The Gramm-Leach-Bliley Financial Modernization Act (Pub. L 106-102, Title V, § 501, S.

Rep. 900 (Nov. 12, 1999)) was enacted in 1999, and its purpose was to "enhance competition in the

financial services industry by providing a prudential framework for the affiliation of banks, securities

firms, insurance companies, and other financial service providers, and for other purposes."  H.R.

Conf. Rep. No. 106-434, at 245 (1999).  Chapter 94 of the Act concerns privacy and provides, in

material part, that "each financial institution has an affirmative and continuing obligation to respect

the privacy of its customers and protect the security and confidentiality of those customers'

---

[6] The dismissal of this Count, which encompassed the Plaintiff's objection to the Proof of Claim, does not, however, preclude her from filing an objection to claim under § 502, in accordance with the discussion herein, and following the procedures set forth in Rule 3007 and E.D. Tenn. LBR 3007-1.

[7] In renumbered paragraph 25, the Complaint incorrectly cites to 15 U.S.C. § 1609(3)(A) as defining financial institutions; however, the correct statutory reference is 15 U.S.C. § 6809(3)(A) (2006).

nonpublic personal information." 15 U.S.C. § 6801(a) (2006).  Pursuant to 15 U.S.C. § 6805 (2006),

"[t]his subtitle and the regulations prescribed thereunder shall be enforced by the Federal functional

regulators, the State insurance authorities, and the Federal Trade Commission with respect to

financial institutions and other persons subject to their jurisdiction under applicable law[.]"

By its very terms, the Gramm - Leach - Bliley Act does not provide a private right of action.

*See e.g., Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) ("No private right

of action exists for an alleged violation of the GLBA."); *Farley v. Williams*, 2005 U.S. Dist. LEXIS

38924, at *9, 2005 WL 3579060, at *3 (W.D.N.Y. Dec. 30, 2005) ("[A] private right of action does

not exist on behalf of an individual . . . claiming harm as the result of a financial institution's failure

to comply with the GLBA's privacy provisions."); *Southhall*, 2008 Bankr. LEXIS 3446, at *11, 2008

WL 5330001, at *4 ("Courts have consistently held that there is no private cause of action created

by Congress in the GLBA.").  Because there is no private right of action, the Plaintiff can plead no

facts entitling her to any relief under Count Two of the Complaint.  The Motion to Dismiss shall be

granted with respect to Count Two, and it shall be dismissed.

### C

### THIRD CAUSE OF ACTION
### (Complaint - Renumbered Paragraphs 31 through 37)

For her Third Cause of Action (Count Three), the Plaintiff alleges that the Defendant

"willfully violated the Courts' [sic] policies putting the Plaintiff at risk and causing damage by

making publicly available the personal data identifiers and sensitive information" addressed in the

Act by failing to redact and/or delete the Plaintiff's personal information, citing to the E-Government

Act of 2002.  Compl. at ¶ 36.  For these alleged violations and actions, the Plaintiff cites to the

court's "inherent ability to enforce [its] orders, rules, and to prevent an abuse of process" under 11

U.S.C. § 105(a).  Compl. at ¶ 37.

As an initial matter, the Complaint cites to the E-Government Act of 2002, providing a

citation of 44 U.S.C. § 3500 et seq.; however, there is no such statutory section.  The Paperwork

Reduction Act, which incorporates portions of the E-Government Act of 2002 (Pub. L. No. 107-347,

Title II, 2002 H.R. Rep. 2458 (Dec. 17, 2002)), is found at 44 U.S.C. § 3501, et seq., and its

purposes, as expressly stated, are as follows:

> (1) minimize the paperwork burden for individuals, small businesses, educational and
> nonprofit institutions, Federal contractors, State, local and tribal governments, and
> other persons resulting from the collection of information by or for the Federal
> Government;

> (2) ensure the greatest possible public benefit from and maximize the utility of
> information created, collected, maintained, used, shared and disseminated by or for
> the Federal Government;

> (3) coordinate, integrate, and to the extent practicable and appropriate, make uniform
> Federal information resources management policies and practices as a means to
> improve the productivity, efficiency, and effectiveness of Government programs,
> including the reduction of information collection burdens on the public and the
> improvement of service delivery to the public;

> (4) improve the quality and use of Federal information to strengthen decision making,
> accountability, and openness in Government and society;

> (5) minimize the cost to the Federal Government of the creation, collection,
> maintenance, use, dissemination, and disposition of information;

> (6) strengthen the partnership between the Federal Government and State, local, and
> tribal governments by minimizing the burden and maximizing the utility of
> information created, collected, maintained, used, disseminated, and retained by or for
> the Federal Government;

(7) provide for the dissemination of public information on a timely basis, on equitable terms, and in a manner that promotes the utility of the information to the public and makes effective use of information technology;

(8) ensure that the creation, collection, maintenance, use, dissemination, and disposition of information by or for the Federal Government is consistent with applicable laws, including laws relating to –

      (A) privacy and confidentiality, including section 552a of title 5;

      (B) security of information, including section 11332 of title 40; and

      (C) access to information, including section 552 of title 5;

(9) ensure the integrity, quality, and utility of the Federal statistical system;

(10) ensure that information technology is acquired, used, and managed to improve performance of agency missions, including the reduction of information collection burdens on the public; and

(11) improve the responsibility and accountability of the Office of Management and Budget and all other Federal agencies to Congress and to the public for implementing the information collection review process, information resources management, and related policies and guidelines established under this subchapter.

44 U.S.C. § 3501 (2006).

The E-Government Act sets forth requirements for the federal courts, including the duty to set up a website containing the following information:  (1) the location and contact information for the courthouse, including the telephone numbers and contact names for the clerk's office and judge's chambers; (2) local rules and standing or general orders of the court; (3) any rules of each individual judge; (4) access to docket information for each case; (5) access to all written opinions issued by the court, whether or not they are published in an official reporter or available through an online service; (6) access to all documents filed in electronic form; and (7) any other information, including downloadable forms, that the court deems useful to the public.  Pub. L. No. 107-347, Title II § 205,

2002 H.R. Rep. 2458, 2913-14 (Dec. 17, 2002); *see also* notes to 44 U.S.C. § 3501.  With respect

to electronic filings within the federal courts system, including privacy concerns, section 205(c)

provides:

> (1) IN GENERAL.--Except as provided under paragraph (2) or in the rules prescribed under paragraph (3), each court shall make any document that is filed electronically publicly available online.  A court may convert any document that is filed in paper form to electronic form.  To the extent such conversions are made, all such electronic versions of the document shall be made available online.

> (2) EXCEPTIONS.--Documents that are filed that are not otherwise available to the public, such as documents filed under seal, shall not be made available online.

> (3) PRIVACY AND SECURITY CONCERNS.--

>> (A)(I) The Supreme Court shall prescribe rules, in accordance with sections 2072 and 2075 of title 28, United States Code, to protect privacy and security concerns relating to electronic filing of documents and the public availability under this subsection of documents filed electronically.

>> (ii) Such rules shall provide to the extent practicable for uniform treatment of privacy and security issues throughout the Federal courts.

>> (iii) Such rules shall take into consideration best practices in Federal and State courts to protect private information or otherwise maintain necessary information security.

>> (iv) To the extent that such rules provide for the redaction of certain categories of information in order to protect privacy and security concerns, such rules shall provide that a party that wishes to file an otherwise proper document containing such information may file an unredacted document under seal, which shall be retained by the court as part of the record, and which, at the discretion of the court and subject to any applicable rules issued in accordance with chapter 131 of title 28, United States Code, shall be either in lieu of, or in addition, to, a redacted copy in the public file.

>> (B)(I) Subject to clause (ii), the Judicial Conference of the United States may issue interim rules, and interpretive statements relating to the application of such rules, which conform to the requirements of this paragraph and which shall cease to have effect upon the effective date of the rules required under subparagraph (A).

21

(ii) Pending issuance of the rules required under subparagraph (A), any rule or order of any court, or of the Judicial Conference, providing for the redaction of certain categories of information in order to protect privacy and security concerns arising from electronic filing shall comply with, and be construed in conformity with, subparagraph (A)(iv).

(C) Not later than 1 year after the rules prescribed under subparagraph (A) take effect, and every 2 years thereafter, the Judicial Conference shall submit to Congress a report on the adequacy of those rules to protect privacy and security.

Pub. L. No. 107-347, Title II § 205, 2002 H.R. Rep. 2458, 2914-15 (Dec. 17, 2002); *see also* notes to 44 U.S.C. § 3501.

Additionally, with respect to "Public protection," the Paperwork Reduction Act provides:

(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if –

(1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or

(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.

(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

44 U.S.C. § 3512 (2006).

As with 11 U.S.C. § 107(c), the Paperwork Reduction Act, incorporated within the E-Government Act of 2002, does not provide a private cause of action. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999); *see also Ass'n of Am. Physicians & Surgs. v.*

*United States Dep't Health & Human Servs.*, 224 F. Supp. 2d 1115, 1129 (S.D. Tex. 2002) ("The PRA does not create a private right of action"); *Tozzi v. EPA*, 148 F. Supp. 2d 35, 43 (D.D.C. 2001) ("[Section] 3512 is only a defense to enforcement actions. Otherwise, the Act has no provision for a private right of action for alleged violation of the Act."). Likewise, as with Count One, there are no facts that the Plaintiff can plead that would entitle her to the relief sought. The Motion to Dismiss shall be granted with respect to Count Three, which shall be dismissed.

### D

### FOURTH AND FIFTH CAUSES OF ACTION
### (Complaint - Renumbered Paragraphs 38 through 47)

For her Fourth Cause of Action (Count Four), the Plaintiff avers that the Defendant violated 11 U.S.C. § 107(c) by filing its claim with personal information evident, thereby "putting the Plaintiff at risk of identity theft and causing damage by making publicly available the Plaintiff's personal, sensitive information and nonpublic data." COMPL. at ¶ 41. For these alleged violations and actions, the Plaintiff cites to the court's "inherent ability to enforce [its] orders, rules, and to prevent an abuse of process" under 11 U.S.C. § 105(a). COMPL. at ¶ 42. Similarly, for her Fifth Cause of Action (Count Five), the Plaintiff alleges that the Defendant violated Rule 9037 of the Federal Rules of Bankruptcy Procedure which directs the redaction of personal or financial information from electronic and paper filings with the court, COMPL. at ¶ 46, and cites to the court's "inherent ability to enforce [its] orders, rules, and to prevent an abuse of process" under 11 U.S.C. § 105(a) for these alleged violations and actions. COMPL. at ¶ 47.[8]

---

[8] In renumbered paragraph 44, the Plaintiff makes a reference to Rule 5.2 of the Federal Rules of Civil
(continued...)

Section 105 outlines certain powers of the court and imposes upon the court a duty to uphold

the provisions of the Bankruptcy Code in subsection (a) by authorizing the following:

> The court may issue any order, process, or judgment that is necessary or appropriate
> to carry out the provisions of this title.  No provision of this title providing for the
> raising of an issue by a party in interest shall be construed to preclude the court from,
> sua sponte, taking any action or making any determination necessary or appropriate
> to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (2005).  The court's authority under § 105(a) is broad but "§ 105(a) is not without

limits, may not be used to circumvent the Bankruptcy Code, and does not create a private cause of

action unless it is invoked in connection with another section of the Bankruptcy Code."  *In re Rose*,

314 B.R. 663, 681 n.11 (Bankr. E.D. Tenn. 2004) (citations omitted).  The Sixth Circuit has held that

"[w]e do not read § 105 as conferring on courts such broad remedial powers. The 'provisions of this

title' simply denote a set of remedies fixed by Congress.  A court cannot legislate to add to them."

*Pertuso*, 233 F.3d at 423 (citation omitted).  Instead, the court may only use its § 105(a)'s equitable

powers "in furtherance of the goals of the [Bankruptcy] Code."  *Childress v. Middleton Arms, L.P.*

*(In re Middleton Arms, L.P.)*, 934 F.2d 723, 725 (6th Cir. 1991).

Undoubtedly included within the court's § 105(a) powers is the authority to find a party in

civil contempt for noncompliance with orders or violations of the Bankruptcy Code and/or Rules;

however, it "does not authorize the bankruptcy courts to create substantive rights that are otherwise

unavailable under applicable law[.]"  *Pertuso*, 233 F.3d at 423 n. 1 (quoting *United States v. Sutton*,

---

[8](...continued)

Procedure as a supplemental rule that went into effect on December 1, 2007, "further strengthening and reinforcing these [privacy] policies."  COMPL. at ¶ 44.  The remainder of Count Five, however, concerns only Rule 9037.  These two procedural rules are not identical but are similar enough that any analysis for Rule 9037 is applicable to Rule 5.2.

786 F.2d 1305, 1308 (5th Cir. 1986)).  Civil contempt is generally used by courts to coerce an individual into performing or obeying an order of the court and to compensate the party injured by the contemptuous actions.  *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1983); *In re Walker*, 257 B.R. 493, 497 (Bankr. N.D. Ohio 2001) ("Compensatory contempt orders compensate the party harmed by the other party's contemptuous actions; coercive orders seek to cajole the party in contempt to act in the manner desired by the court.") (quoting *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 595 (6th Cir. 1999)).  A party seeking civil contempt must establish, by clear and convincing evidence, that the offending party "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order[,]" after which the burden shifts to the offending party to produce evidence of "a present inability to comply" without regard to intent, as "[w]illfulness is not an element of civil contempt[.]"  *Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (citations omitted); *see also In re Crabtree*, 39 B.R. 702, 710 (Bankr. E.D. Tenn. 1984).

Appropriate fines for civil contempt generally include the parties' actual damages incurred and reasonable attorney's fees.  *Braun v. Champion Credit Union (In re Braun)*, 152 B.R. 466, 474 (N.D. Ohio 1993).  Nevertheless, remedies are within the discretion of the court, and the party seeking contempt "must put on credible evidence showing the amount of the loss sustained." *Distad v. United States (In re Distad)*, 392 B.R. 482, 487 (Bankr. D. Utah 2008).

As the court discussed in Section A *supra*, 11 U.S.C. § 107(c) does not create a private right of action, and, under Sixth Circuit authority, § 105(a) may not be used to create a private right of action when it does not otherwise exist.  Likewise, "[t]he rules are designed to supplement the

25

statute, not replace it." *Dove-Nation*, 318 B.R. at 151 (citing 28 U.S.C. § 2075 (2005), which states that "[t]he Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right."). Accordingly, "rules governing procedure in the federal courts do not give rise to private causes of action," *Good v. Khosrowshahi*, 2008 U.S. App. LEXIS 22199, at *11, 2008 WL 4596342, at *4 (10th Cir. Oct. 15, 2008) (holding that Rule 5.2 of the Federal Rules of Civil Procedure did not create a private right of action for failing to redact information from an electronically filed document).

Furthermore, because § 107(c) "does not regulate the behavior of the parties, but rather addresses the operation of the court[,]" *Newton*, 2009 WL 277437, at *2, there is no contemptuous behavior to be remedied. The court has not entered any order under the provisions of § 107(c) specifically limiting access to any information, nor are there any specific Bankruptcy Code sections implicated by § 107(c) under which the Defendant's failure to redact the Plaintiff's information could be actionable. Because the Plaintiff cannot utilize § 105(a) in conjunction with § 107(c) to create an action that does not otherwise exist, she cannot sustain an action for civil contempt under Count Four, and it shall be dismissed.

Notwithstanding the above, insofar as Count Five seeks a finding of contempt for violations of Rule 9037, the court is expressly authorized by § 105(a) to enforce and implement court orders and rules, which includes, unquestionably, the Federal Rules of Bankruptcy Procedure. Rule 9037 directs that, in any filing containing a debtor's social security number and birth date, only the last four digits of the social security number and the birth year, respectively, are to be disclosed, *see* FED.

26

R. Bankr. P. 9037(a)(1), (2), and noncompliance with this Rule could potentially give rise to a

contempt action. Accordingly, the court finds that the Plaintiff has pled sufficient facts to withstand

the Motion to Dismiss and it will be denied as to the contempt actions set forth in that count.[9]


**E**

**SIXTH CAUSE OF ACTION**
**(Complaint - Renumbered Paragraphs 48 through 56)**

For her Sixth Cause of Action (Count Six), the Plaintiff alleges that the Defendant

"intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion or

private concerns or affairs of the Plaintiff" and "intentionally and/or negligently caused harm to

Plaintiff's mental and emotional well being by engaging in this highly offensive conduct thereby

invading and intruding upon Plaintiff's right to privacy" by failing to redact the personal information

from its proof of claim. Compl. at ¶ ¶ 51-52. In association with this Count, the Plaintiff seeks

exemplary damages, damages for mental and emotional anguish and distress, actual damages,

punitive damages, attorney's fees, and costs. Compl. at ¶¶ 54, 56.


The Plaintiff's invasion of privacy and intentional or negligent infliction of emotional distress

causes of action involve the application of Tennessee law. "The Restatement (Second) of Torts

§ 652D (1977) recognizes four distinct types of invasion of privacy: 1) appropriation, 2) false light

publicity, 3) public disclosure of private facts, and 4) intrusion." *Scarborough v. Brown Group, Inc.*,

---

[9] Although procedurally, contempt proceedings are contested matters initiated through the filing of a motion
pursuant to Rule 9020 of the Federal Rules of Bankruptcy Procedure, which states that "Rule 9014 governs a motion for
an order of contempt[,]" the court will, for the sake of judicial economy, allow this contempt action to proceed within
this adversary proceeding.

27

935 F. Supp. 954, 963 (W.D. Tenn. 1995). The tort of public disclosure of private facts, as set forth in the Restatement (Second) of Torts § 652D, entitled "Publicity Given To Private Life," is as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
>> (a) would be highly offensive to a reasonable person, and
>>
>> (b) is not of legitimate concern to the public.

*Cawood v. Booth*, 2008 Tenn. App. LEXIS 715, at *24, 2008 WL 4998408, at *8-9 (Tenn. Ct. App. Nov. 25, 2008). "Under the Restatement definition, a required element of the torts of publicity given to private life and publicly placing a person in false light is *publicity*." *Rossi v. Schlarbaum*, 2009 WL 222418, at *10 (E.D. Pa. Jan. 29, 2009).

> The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

*Cawood*, 2008 Tenn. App. LEXIS 715, at *24-25, 2008 WL 4998408, at *9 (quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. a).

In other words, "[t]he interest protected by the tort is the plaintiff's right to be free from unwanted publicity  Thus essential to recovery is a showing of a public disclosure of private facts. Communication to a single individual or to a small group of people, absent breach of contract, trust,

28

or other confidential relationship, will not give rise to liability." *Beard v. Akzona, Inc.*, 517 F. Supp.

128, 132 (E.D. Tenn. 1981).   With respect to the private information prong, comment b to

Restatement § 652D states as follows:

> b. Private life. The rule stated in this Section applies only to publicity given to
> matters concerning the private, as distinguished from the public, life of the
> individual.   There is no liability when the defendant merely gives further publicity
> to information about the plaintiff that is already public.   Thus there is no liability for
> giving publicity to facts about the plaintiff's life that are matters of public record,
> such as the date of his birth, the fact of his marriage, his military record, the fact that
> he is admitted to the practice of medicine or is licensed to drive a taxicab, or the
> pleadings that he has filed in a lawsuit.   On the other hand, if the record is one not
> open to public inspection, as in the case of income tax returns, it is not public, and
> there is an invasion of privacy when it is made so.

RESTATEMENT (SECOND) OF TORTS § 652D cmt. b.

Taking the Complaint in a light most favorable to the Plaintiff, the court finds that she has

not pled sufficient facts to withstand the Motion to Dismiss with respect to the invasion of privacy

portion of Count Six.   The only factual allegations associated with this cause of action are the

averment that the Defendant filed the Proof of Claim with attachments containing private, sensitive

information and that the filing of this document made the Plaintiff's information available to the

general public.   And while there is no dispute that the Defendant did file the Proof of Claim on

October 31, 2008, and its attachments contained the Plaintiff's complete social security number and

birth date, the Plaintiff has failed to allege facts sufficient to establish that the information was

disseminated to "the public at large."

Like the majority of courts within the United States, the Bankruptcy Court for the Eastern

District of Tennessee requires the use of electronic filing, and "[a]ll attorneys practicing in this court

must register as a Registered User of the Electronic Case Filing (ECF) system and file their pleadings
and other papers electronically through the ECF system[,]" unless granted leave by the court for
noncompliance, after showing good cause.  E.D. Tenn. LBR 5005-4(b); *see also* Administrative
Procedures for Electronic Case Filing for the United States Bankruptcy Court for the Eastern District
of Tennessee, effective May 17, 2005, as amended (hereinafter E.D. Tenn. Admin. Procs. or
Administrative Procedures), at ¶¶ I.  Eligibility to become a Registered User in the ECF system is
limited to those entities expressly designated in the Administrative Procedures:

### II.  Registration for the ECF System
#### A.  Eligibility
*1.  General Rule*
Any attorney in good standing who is admitted to practice in this court
pursuant to E.D. Tenn. LBR 2090-1, including *pro hac vice* admissions, and
any non-attorney trustee are eligible to register and be granted a log-in and a
password to participate in the electronic retrieval and filing of documents in
the ECF system.

*2.  Creditors and Court Reporters*
A creditor or a claim agent may obtain a limited use log-in and password in
order to electronically file proofs of claims, notices or evidence of transfers
of claims, withdrawals of claims, notices of appearance and requests for
notices, and reaffirmation agreements.  In addition, limited use log-ins and
passwords may be issued to court reporters and transcribers to facilitate the
electronic filing of transcripts.

E.D. Tenn. Admin. Procs. at ¶ II.A.


Public access to the court's ECF system is likewise limited by the Administrative Procedures:

### VI.  Public Access to ECF
#### A.  Public Access at the Court
Electronic access to the electronic docket and documents filed in the ECF
system is available to the public at no charge at each divisional office of the
clerk during regular business hours.

#### B.  PACER system

Although any person can retrieve and view documents in the ECF system and access information from it without charge at the clerk's offices, electronic access to the ECF system for viewing purposes is otherwise limited to subscribers to the Public Access to Court Electronic Records (PACER) system and, in accordance with the ruling of the Judicial Conference of the United States, a user fee will be charged for accessing certain detailed case information, such as reviewing filed documents and docket sheets, but excluding review of calendars and similar general information. Information regarding subscribing to PACER is available at the court's web site at www.tneb.uscourts.gov and at each divisional office of the clerk.

### C. Conventional Copies and Certified Copies
Conventional and certified copies of electronically filed documents may be obtained at any of the clerk's divisional offices upon payment of the fee required by 28 U.S.C. § 1930.

E.D. Tenn. Admin. Procs. at ¶ VI.

The simple fact that all documents filed in a bankruptcy case file are technically deemed "public records" does not satisfy the "publicity" element necessary to state a claim for invasion of privacy under Tennessee law. Here, the Proof of Claim was filed only within the court's ECF system, and as evidenced by the Administrative Procedures, access to ECF is limited by the registration requirements to attorneys admitted to practice in the Bankruptcy Court for the Eastern District of Tennessee, non-attorney trustees, creditors, claims agents, court reporters, and transcribers by the registration requirements and to the public at large by fee requirements and having accessibility to travel to one of the divisional offices of the clerk located in Chattanooga, Greeneville, and Knoxville. Moreover, the attachments to the Proof of Claim containing the Plaintiff's information were only accessible on the court's ECF system from October 31, 2008, until they were removed two weeks later on November 14, 2008, and in order to access it, a user would

have been required to access the Plaintiff's Claims Register rather than the docket sheet for her case and then access the individual Proof of Claim itself.

The *Southhall* court examined the exact issues raised by the Plaintiff, albeit under Alabama law which is likewise based on Restatement (Second) of Torts § 652D and mirrors that of Tennessee, and came to the following conclusions:

> The Debtor has failed to allege any facts that would support a finding that the matter was publicized. To the contrary, while the Claim was filed with this Court via the electronic filing system, such information is only available to parties who take affirmative actions to seek out the information. There are three ways to view information filed in any particular debtor's case. For access to the Court's electronic database, parties must be licensed to practice law and must register with the Court and obtain a login and password. As officers of the Court, that an attorney may have had access to this information does not pose a risk to the Debtor. Other creditors of the Debtor already had access to this information. The notice of the section 341 meeting of creditors that was mailed to all of the Debtor's creditors contained the Debtor's full social security number as required by Rule 2002(a)(1) of the Federal Rules of Bankruptcy Procedure. The 341 notice accessible in PACER is a redacted notice pursuant to Rule 9037 and contains only the Debtor's last four digits of her social security number. The final way to gain access to the bankruptcy file is to physically visit the Clerk's Office and use the computers provided to the public there. While it would appear that public access is freely granted to case files, if sought out, the likelihood that any member of the public viewed the Debtor's file is remote. The Clerk's Office sees little foot traffic, very few members of the public access the Court's electronic database in the Clerk's Office. Further, the Debtor has not asserted or alleged that anyone actually sought out and viewed the Debtor's personal information nor has she asserted that she suffered any damages as a result of the filing of the Claim. The Court therefore finds that the information was not in fact "publicized" and did not constitute an invasion of privacy. This count therefore is due to be dismissed.

*Southhall*, 2008 Bankr. LEXIS 3446, at *9-11, 2008 WL 5330001, at *3; *see also Newton*, 2009 WL 277437 (adopting the rationale of the *Southhall* court's analysis).

32

This court agrees with the analysis of the *Southhall* court, noting in this case, as in *Southhall*, that the Plaintiff has not made any allegations that her case file was ever viewed in the clerk's office or that her information was, in fact, ever seen by any member of the public at large.  Likewise, one of the offending documents, which reflected the Plaintiff's social security number, was the official Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines issued by the court to all creditors on October 13, 2008.  Because the Plaintiff has not alleged facts sufficient to establish a cause of action for invasion of privacy under Tennessee law, that portion of Count Six shall be dismissed.[10]

The Plaintiff also alleges intentional infliction of emotional distress.  Under Tennessee law, the following elements must be satisfied in order to establish a prima facie case of intentional infliction of emotional distress:  "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff."  *Miller v. Willbanks*, 8 S.W.3d 607, 612 (Tenn. 1999).  Expert proof of a serious mental injury is not required; however, to vitiate this necessity, a plaintiff must "show that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Miller*, 8 S.W.3d at 614 (quoting RESTATEMENT (SECOND)

---

[10] The court also notes that Tennessee favors disclosure of information to the public, as evidenced by the Tennessee Public Records Act, which "mandates that 'all state, county and municipal records . . . shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.'"  *Schneider v. City of Jackson*, 226 S.W.3d 332, 340 (Tenn. 2007) (quoting TENN. CODE ANN. § 10-7-503(a) (Supp. 2006)); *see also* TENN. CODE ANN. § 10-7-504 (Supp. 2008) (setting forth statutory "Confidential records").  "[T]he General Assembly has directed the courts to construe broadly the Public Records Act 'so as to give the fullest possible access to public records.'"  *Schneider*, 226 S.W.3d at 340 (quoting TENN. CODE ANN. § 10-7-505(d) (1999)).

OF TORTS § 46 cmt. d). Nevertheless, "the evidence must establish that the plaintiff's mental injury is serious or severe." *Miller*, 8 S.W.3d at 615 n. 4.

With respect to this portion of Count Six, the court finds that the Plaintiff has failed to state a claim upon which relief may be granted. None of the facts pled aver that the Defendant engaged in conduct so outrageous to be outside the bounds of decency nor has the Plaintiff pled facts to establish that she has suffered a serious or severe mental injury. Accordingly, the Motion to Dismiss with respect to the allegations of intentional infliction of emotional distress shall be granted, and the Plaintiff's Complaint dismissed as to that cause of action.

Finally, the Plaintiff argues negligent infliction of emotional distress. "In Tennessee, such a claim requires that the plaintiff establish the elements of a general negligence claim: (1) duty, (2) breach of duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation[] . . . [and the plaintiff] must establish the existence of a serious or severe emotional injury that is supported by expert medical or scientific evidence." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004); *accord Miller*, 8 S.W.3d at 614-15 ("when the conduct complained of is negligent rather than intentional, the plaintiff must prove the serious mental injury by expert medical or scientific proof."). In addition to the foregoing elements,

> [i]n order to recover for emotional injuries, the plaintiff must prove two things: (1) that the defendant's negligence in fact caused the third person's injuries or death and the plaintiff's emotional injury; and (2) that the third person's injury or death and the plaintiff's emotional injury were the proximate and foreseeable results of defendant's negligence.

*Thurmon v. Sellers*, 62 S.W.3d 145, 163 (Tenn. Ct. App. 2001).

34

Again, the court finds that the Plaintiff has not pled sufficient facts to state a claim upon which relief may be granted, and the portion of Count Six concerning negligent infliction of emotional distress shall also be dismissed.  None of the primary elements of negligence have been pled, and the Plaintiff has not pled any form of serious mental injury as established by medical or scientific proof.  Furthermore, none of the facts pled address the foreseeability element required.  As such, the Motion to Dismiss shall be granted with respect to the negligent infliction of emotional distress allegations stated in Count Six, and they shall be dismissed.[11]

## IV

In summary, with respect to Counts One, Two, Three, Four, and Six, the court finds that the Plaintiff has failed to state a claim upon which relief may be granted and has failed to plead any facts to support a cause of action for the requested relief, and each will be dismissed in its entirety.

With respect to Count Five, the court finds that the Plaintiff has failed to state a claim upon which relief may be granted and has failed to plead any facts to support a cause of action for the requested relief with respect to any private right of action under Rule 9037 of the Federal Rules of Bankruptcy Procedure, and that portion of Count Five shall be dismissed.  The Plaintiff has, however, pled sufficient facts to withstand the Motion to Dismiss with respect to a contempt action, in conjunction with 11 U.S.C. § 105(a), and that portion of Count Five shall not be dismissed.

---

[11] The Plaintiff makes a blanket request for punitive damages in Count Six.  Under Tennessee law, punitive damages, "[t]he purpose of [which] is not to compensate the plaintiff but to punish the wrongdoer and to deter others from committing similar wrongs in the future[,]" *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 906-07 (Tenn. 1999), may be assessed only in cases where a defendant has acted intentionally, fraudulently, maliciously, or recklessly. *Metcalfe v. Waters*, 970 S.W.2d 448, 450 (Tenn. 1998).  Having found that the Plaintiff has failed to state a claim upon which relief may be granted for intentional infliction of emotional distress, her request for punitive damages is moot.

An order consistent with this Memorandum will be entered.

FILED:  February 13, 2009

BY THE COURT

/s/  RICHARD STAIR, JR.

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE